### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

---

**RAFAEL MARQUEZINI,**

|                          |                        |
|--------------------------|------------------------|
| **Plaintiff**            | **COMPLAINT**          |
| **v.**                   | **CA. NO.  12-40101**  |

**SOURCE ONE FINANCIAL CORPORATION,**

**Defendant**

---

### Introduction

1.      This is an action brought by an individual consumer for unfair and deceptive debt collection and repossession practices.  Defendant has violated 15 U.S.C. §1601 et seq. (Federal Truth in Lending Act), M.G.L. c. 140D (Massachusetts Truth in Lending Act); the Massachusetts Retail Installment Sales Act, M.G.L. c. 255B, §§20A, 20B ("RISA"), the state Uniform Commercial Code, M.G.L. c. 106 §9-610-625 ("UCC"); state debt collection laws including M.G.L. c. 93 §49; the Massachusetts Attorney General's regulations, 940 C.M.R. 7.00, et seq.; and M.G.L. c. 93A and the Attorney General's regulations promulgated thereunder (940 C.M.R. 3.01 et seq.).

### Parties

2.      Plaintiff, Rafael Marquezini ("Mr. Marquezini "), is an individual who resides in Worcester, Massachusetts.

3.      Defendant, Source One Financial Corporation ("Source One") is a Massachusetts corporation with a principal place of business of 183R Washington Street, Norwell, MA  02184.

**Jurisdiction And Venue**

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and

1367, and 15 U.S.C. §1640(e).  Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2),

because a substantial part of the events giving rise to Mr. Marquezini's claims occurred here.

**Facts**

5.      On or about November 12, 2008 Plaintiff purchased a used Nissan from Master Used

Cars in Somerville, Massachusetts primarily for personal, family or household use and entered into a

Retail Installment Sales Contract for $14,982.54 (the "RISC").  Pursuant to the RISC, plaintiff

incurred a finance charge of $3,882.54 and financed an amount of $11,100.00.  The RISC was

payable over three years with weekly payments of $96.06.  The annual percentage rate was 21%.

6.      The RISC was immediately assigned to Source One.

7.      Mr. Marquezini made loan payments to Source One.

8.      In December 2010 the car's transmission failed.   Mr. Marquezini took the car into

AAMCO to obtain a repair quote.  AAMCO undertook the repair without getting Mr. Marquezini's

consent and the $3,600.00 charge was more than he could afford.  Seeing no other choice he

contacted Source One and told them to go ahead and repossess the car from AAMCO.

9.      Over the phone Source One's employee, Gabriela Paiva, urged Mr. Marquezini to let

Source One finance the repairs by adding the cost to his loan balance and extending the loan term

by one year.  She said the payments would stay the same.  He agreed and was told where to pick up

the car.

10.     Plaintiff never received anything in writing related to this transaction and never signed

any agreement but continued to make payments (although he did subsequently fall behind).

11.     Shortly thereafter Mr. Marquezini received a letter in the mail from Source One congratulating him for paying off his loan.

12.     Mr. Marquezini's credit report indicates that his original loan was closed in April 2011 and a new loan advanced in the amount of $7,653.00.

13.     Source One's internal records, as evidenced by its Loan Payout Recap for this account prepared on November 29, 2011, indicate that Mr. Marquezini and Source One entered into a loan in the amount of $7,652.29 on April 4, 2011.

14.     Mr. Marquezini never received any written disclosures or other written documents evidencing this alleged new April 2011 loan.

15.     In 2011, Mr. Marquezini began having trouble keeping up with his loan payments and received one or more Notices of Right to Cure Default.

16.     The vehicle was then damaged in an accident and brought to Central Autoworks in Worcester for repairs.  The car was at the shop for several weeks without getting repaired.  Since the car was operable Mr. Marquezini decided to take it to use and bring it back for the repairs to be done when the shop could get to them.  While he had the car it was towed because of construction on the street.

17.     At that point Mr. Marquezini began getting collection calls from Gabriela Paiva, an employee of Source One, and she communicated with him via Facebook.

18.     Ms. Paiva left telephone messages on October 19 and 21, 2011 and additional dates and spoke to Mr. Marquezini at other times.

19.     On October 19, 2011 Ms. Paiva initiated an exchange with Mr. Marquezini on his Facebook page that continued until October 21, 2011.

20.     The calls and Facebook comments were extremely aggressive and offensive.

21.    Mr. Marquezini maintains Facebook accounts under both his real name and the business name he uses for DJ purposes, Rafael Belfort.

22.    In her comments and phone messages Ms. Paiva demeans Mr. Marquezini for the fact that he uses two names.  She says they have been talking to his landlord to see if he really lives there and contacting everyone he listed as a reference.  She calls him stupid, a liar, a loser and threatens to take him to court.

23.    Mr. Marquezini told Ms. Paiva where the car was and invited her to go and get it.  On information and belief, Source One took possession of the car from the tow lot on or before October 24th.

24.    All the communications between Mr. Marquezini and Ms. Paiva were conducted in Portugeuse.  The following is a translation of some of Ms. Paiva's statements:

> "You thought that I was stupid but no, you are the stupid one. And now we'll take you to court and it's not gonna be the dealer it's gonna be Source One.  . . . soon you'll be receiving all the court doumentation for the fact that we helped you out when your transmission broke down. . . be prepared because in three weeks tops you'll have your court paperwork – all of them.  (Oct. 20th phone message)"

> "Stop Rafael.  You're nothing more than a liar, so full of yourself. . . Stop Rafael.  Pay your bills then you'll be able to walk with your head held up high again."  (Oct. 20th phone message #2)

> "And above all you're a liar.  We left you a message every two days and you just ignore it. But like I said before, I will say it again.  Good luck, Rafael Belfort.  We have already started to act and I don't need you here on Facebook anymore . . .loser." (Facebook Oct. 21st)

25.    Mr. Marquezini never received any court papers from Source One.

26.    Mr. Marquezini was extremely upset and anxious as a result of the collection calls and Facebook messages and could not stop thinking about them.

27.     On October 25, 2011 Mr. Marquezini felt extremely ill and went to the Emergency Room where he was diagnosed with Anxiety Reaction.

28.     Shortly thereafter Mr. Marquezini retained counsel who contacted Source One and arranged to turn over the insurance proceeds he had received for the repair of the vehicle. At Source One's request Mr. Marquezini's attorney also negotiated with Central Autoworks and got them to agree to complete the repairs they had started for no further charge.

29.     On November 18, 2011 a Notice of Redemption was sent to Mr. Marquezini's counsel.

30.     The Notice stated that the full amount due under the contract was $617.00 not including repossession and/or storage fees.

31.     This redemption amount was inaccurate.

32.     Mr. Marquezini did not receive any other post-repossession notices.

33.     After repossession, Source One assigned the vehicle back to the original dealer, Master Used Cars.

34.     On information and belief the vehicle was sold at public auction in May 2012.

35.     Mr. Marquezini did not receive notice of the sale.

36.     Source One's internal records, as evidenced by its Loan Payout Recap for this account prepared on November 29, 2011, indicate that Mr. Marquezini's vehicle was repossessed pursuant to a 4/4/2011 loan in the amount of $7,652.29.

37.     Mr. Marquezini did not enter into a written loan agreement with Source One on April 4, 2011 and Source One did not hold a security interest in his vehicle in connection with any such loan agreement.

38.     As a result of the actions of Source One Mr. Marquezini suffered actual damages, including but not limited to, anxiety, embarrassment, humiliation, nightmares and difficulty sleeping, marital stress, anxiety attacks, confusion as to his legal rights and the loss of his vehicle.

39.     On April 16, 2012, Mr. Marquezini made a demand upon Source One pursuant to M.G.L. c. 93A, §9.

40.     Source One refused or failed to make any reasonable offer of settlement in response to the c. 93A letter.

### Count I: Violation Of Federal and State TILA
### 15 U.S.C. §1601, et seq. and M.G.L. c. 140D

41.     Plaintiff restates and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

42.     Source One made an extension of credit to Plaintiff pursuant to the Truth in Lending Act.

43.     Source One is a creditor as defined by TILA.

44.     The credit was primarily for personal, family or household purposes.

45.     Source One failed to provide any of the disclosures required by M.G.L. c. 140D, §12 and 15 U.S.C. §1631-32 in connection with the extension of credit.

46.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1640.

### Count II: Violation Of The Retail Installment Sales Act
### M.G.L. c. 255B, §§20A, 20B

47.     Plaintiff restates and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

48.     By repossessing Mr. Marquezini's vehicle without holding a security interest, Source One has violated M.G.L. c. 255B, §20B.

## Count III: Violation Of UCC
## M.G.L. c. 106 §§9-610-9-625

49.     Plaintiff restates and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.     The Notification Before Disposition of Collateral is jointly required by RISA (M.G.L. c. 225B § 20B) and the UCC (M.G.L. c. 106, §§ 9-610 to 9-625). These provisions of Massachusetts law regulate the repossession and disposition of motor vehicles financed under Retail Installment Sales Agreements. To protect consumers' valuable property interests in financed vehicles, RISA and the UCC impose strict and mandatory requirements following a repossession.

51.     RISA provides, in pertinent part in c. 255B § 20(B)(d) that its provisions must be read as a complement to the UCC repossession provisions:

> (d) The creditor may after gaining possession sell or otherwise dispose of the collateral. Unless displaced by the provisions of this section and section twenty A the rights and obligations of the parties, including the redemption and disposition of the collateral shall be governed by the provisions of Part 6 of Article 9 of chapter 106.

52.     Before a creditor may sell a repossessed vehicle, the UCC requires that it send the borrower "a reasonable authenticated notification of disposition," UCC, § 9-611 and §9-614(1) provides, in pertinent part, that "[a] notification of disposition must provide the following information":

> (A) the information specified in Section 9-613(l);
>
> (B) a description of any liability for a deficiency of the person to which the notification is sent… .
>
> (C) a telephone number from which the amount that must be paid to the

secured party to redeem the collateral under Section 9-623 is available; and

(D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

53.     Source One's November 18, 2011 Notice of Redemption omits the disclosure required by §9-614(B), an accurate description of any liability for a deficiency of the person to whom the notification is sent.

54.     Source One's Notice of Redemption omits the disclosure of the required telephone numbers.

55.     Source One did not send Mr. Marquezini any other post-repossession notices.

56.     Source One's failure to comply with the mandatory notice requirements of RISA and UCC renders it liable for statutory damages in the amount of the finance charge and 10% of the principal borrowed, pursuant to c. 106, § 9-625.


**Count IV: Violation of M.G.L. c. 93A**

57.     Plaintiff restates and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

58.     As detailed above, Source One has violated M.G.L. c. 93A, §2 and the Attorney General's regulations promulgated thereunder (940 C.M.R. 3.01 et seq.).

59.     As detailed above, Source One has violated the Attorney General's debt collection regulations, 940 CMR 7.00, et seq.

60.     Source One violated M.G.L. c. 93, §49 by attempting to collect a debt incurred by the plaintiff primarily for personal, family or household purposes in an unfair, deceptive or unreasonable manner.  Violation of this statute violates M.G.L. c. 93A.

61.     The communications of Source One's employee were harassing and embarrassing, used offensive language and threatened actions which Source One does not in fact take (i.e. take debtors to court on auto loan deficiencies) in violation of M.G.L.  c. 93, §49(c).

62.     Source One's employee also threatened to communicate information about the debt to Mr. Marquezini's landlord and credit references in violation of c. 93, §49(a) and 940 CMR 7.06.

63.     The conduct of Source One was willful or knowing within the meaning of M.G.L. c. 93A, §2.

64.     Mr. Marquezini has suffered damages as a result of Source One's conduct including but not limited to, anxiety, embarrassment, humiliation, nightmares and difficulty sleeping, marital stress and anxiety attacks, emotional distress, and costs and attorney's fees expended in enforcing his claims.

65.     Source One's refusal to grant relief upon demand was in bad faith, with knowledge or reason to know that the acts or practices complained of violated c. 93A, §2.

66.     As a result of the above violations of state law, the Defendant is liable to the Plaintiff in the sum of his actual damages, doubled or trebled, statutory damages, and attorney's fees and costs.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant in the amount of:

(a)  actual damages, doubled or trebled pursuant to M.G.L. c. 93A;

(b)  actual damages pursuant to 15 U.S.C. §1640;

(c)  statutory damages pursuant to 15 U.S.C. §1640;

(d)  statutory damages pursuant to M.G.L. c. 93A, §9;

(e)  costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1640 and M.G.L. c. 93A, §9;

(f)  statutory damages pursuant to UCC §9-625(c)(2) in the amount of the finance charge plus ten percent of the principal amount of the RISC; and

(g)  for such other and further relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted

**RAFAEL MARQUEZINI,**
By his attorney:

/s/ Elizabeth A. Miller
Elizabeth A. Miller
Attorney at Law
BBO #559347
125 Summer Street
Suite 1030
Boston, MA  02110
Telephone: (617) 478-4914
elizabethamiller@comcast.net

Date:  August 15, 2012